FILED
2007 Nov-28  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JON TRISTAN HOLLAND,

       Plaintiff,                         CV-05-J-1968-S

v.

SCOTT MCDONALD, ROBERT
MYER, TIMOTHY PUGH, ED
LEACH, the CITY OF HOOVER,

       Defendants.

## <u>MEMORANDUM OPINION</u>

## I. PROCEDURAL BACKGROUND

Pending before the court is the defendants' motion for summary judgment (doc. 49), evidentiary materials (doc. 50), statement of facts (doc. 51), and brief in support of said motion (doc. 52). By court order (doc. 54), the defendants were allowed to resubmit exhibit 7 of their evidentiary materials with exhibits A and B attached thereto (doc. 55). The defendants have also submitted a request for oral argument (doc. 56).

The plaintiff filed a response brief (doc. 61), which is supported by evidentiary materials (docs. 57, 58, 59, & 60) and a supplemental brief (doc. 63).

1

The defendants have filed a reply to the plaintiff's response (doc. 69).

Also pending before the court is the plaintiff's motion to strike the affidavits of Officer McDonald, Officer Pugh, Officer Leach, and Officer Mayer[1] (doc 62); the defendants' motion to strike the plaintiff's supplemental brief (doc. 67); and the defendants' motion to strike the plaintiff's reply brief (doc. 68).  The court concludes that these motions are MOOT in light of the court's ruling on the defendants' motion for summary judgment.  The court also finds that the facts and legal arguments are adequately presented by the parties' submissions and the decisional process will not be significantly aided by oral argument.

Upon consideration of the pleadings, memoranda of the parties, and evidentiary submissions received, the court is of the opinion that the defendants' motion for summary judgment is due to be GRANTED IN PART and DENIED IN PART as set out below.

## II. FACTUAL BACKGROUND

The record in this case is replete with disputes over what happened on the night of December 22, 2003.  That evening, the plaintiff, Tristan Holland, visited

---

[1]Mayer is the correct spelling of the defendant's name.  The Complaint, which is the only document which identifies each defendant separately, incorrectly identified this defendant as Robert Myer.

the apartment of a friend in Hoover, Alabama.  Holland dep., at 30, 32.  Holland

claims that he had one drink that night around 8:30 P.M.  *Id*. at 33.  Holland also

took a Lortab that night around 6:00 P.M.  *Id*.  As he was leaving his friend's

apartment complex around 11:00 P.M., Holland ran over a curb and punctured the

tire of his car.  *Id*. at 30-31, 36; Video from Officer McDonald's car, at 11:10:35

P.M.  Holland began to change the tire when he was approached by two Hoover

police officers - one of which was Officer Scott McDonald.  *Id*. at 36-37.

Officer McDonald asked Holland a series of questions about what had

happened.  Holland dep., at 37-38.  Holland answered all of Officer McDonald's

questions and tried to continue changing his tire.  *Id*. at 36-37.  Officer McDonald

then asked Holland to submit to a breathalyser test.  *Id*. at 39.  Holland refused to

take the breathalyser test.  *Id*.  Officer McDonald then asked Holland to perform a

field sobriety test, which Holland also refused.  *Id*.  After Holland refused to

perform the field sobriety test, Officer McDonald informed Holland that he was

being placed under arrest for driving under the influence.  *Id*. at 39-40.  Holland

was placed in handcuffs and taken to the Hoover jail in Officer McDonald's patrol

car.  *Id*. at 41-42.

Officer McDonald and Holland arrived at the Hoover jail around midnight.

Holland dep., at 46.  When they arrived at the Hoover jail, Holland was taken to a

3

booking area and asked a series of questions by Officer Robert Mayer, Officer Tim

Pugh, and Officer McDonald as part of the booking process.  *Id.* at 43-48; Pugh

aff., at ¶ 5.  Officer McDonald asked Holland for a second time to take a

breathalyser, which Holland again refused.  Holland dep., at 43.  Holland was then

asked whether he had AIDS or HIV.  *Id.* at 44.  Holland answered that he may

have been exposed to HIV, but that he had never been tested.  *Id.*  While Holland

was being questioned, he began to ask the officers if he could use the telephone.

*Id.* at 48.  According to Holland, the officers ignored his initial request and, in

response to his subsequent requests, told him he could use the telephone at a later

time.  *Id.*

After the officers finished questioning Holland, they placed him in a

holding cell.  Holland dep., at 49.  The officers claim that Holland was placed in a

holding cell because he was belligerent and uncooperative during the booking

process.  Pugh aff., at ¶ 6.  Holland disputes the officers' description of his

demeanor during the questioning.  Holland claims that he answered the officers'

questions and was non-abusive throughout the questioning and answering.

Holland aff., at 2-3.[2]  After he was placed in the holding cell, Holland continued to

_____

[2]Holland's affidavit does not have paragraph numbers or page numbers.  Therefore, his
affidavit is cited to the page as if it was numbered.

4

ask the officers if he could use the telephone.  Holland dep., at 49.  When the officers refused his requests, Holland began to knock on the cell door with his hand.  *Id*.  Holland denies hitting the cell door with either his head or his feet.  Holland aff., at 3.  Holland claims that the officers told him to "shut up, be quiet, go to bed."  Holland dep., at 50.  Holland admits that he called one of the officers an "asshole," but denies using any racial slurs.  Holland aff., at 3.

The officers claim that Holland yelled, cursed, and repeatedly hit the cell door.  Pugh aff., at ¶ 6.  The officers claim that Holland was so loud that he woke up the other prisoners at the Hoover jail.  *Id*.  Regardless of how cooperative Holland was, it is undisputed that the officers threatened to restrain Holland if he would not be quiet.  Holland dep., at 52; Mayer aff., at ¶ 7.

The officers claim that they decided to place Holland in a restraint chair because his actions posed a threat to himself and to the officers.  McDonald aff., at ¶ 14.  What happened next is vigorously disputed.  Holland claims that he did not resist the officers' attempt to escort him into the restraint chair.  Holland at 53-55.  He claims that the officers pushed him face first into the chair causing his face to hit the seat of the chair and his nose to start bleeding.  *Id*. at 52.  Holland claims that the officers beat him "senseless" while his head was buried in the seat of the chair. *Id*. at 55

The officers claim that when Officer McDonald, Officer Mayer, and Officer Pugh entered Holland's cell, he moved to the back of the cell and stuffed his hands into his pockets. McDonald aff., at ¶ 15. The officers claim that when they tried to escort Holland to the restraint chair, he stiffened his body like a board and refused to turn around from a position facing the chair. *Id*. at ¶ 16. At some point while Holland was being escorted from the holding cell to the chair, Officer Leach joined the other three officers to help restrain Holland. Leach aff., at ¶ 6. The officers said that when Holland was escorted to the chair, he dropped to his knees and buried his face into the seat of the chair. Mayer aff., at ¶¶ 8, 9. The impact of his face hitting the seat of the chair caused Holland's nose to start bleeding. McDonald aff., at ¶ 16. While Holland's face was in the seat of the chair, he grabbed the chair's armrests. *Id*. at ¶ 17. At this point, Officer McDonald struck Holland 8-10 times in the radial nerve causing Holland to let go of the armrests. McDonald dep., at 48. Holland's hands were then placed in handcuffs behind his back. McDonald aff., at ¶ 17. According to Officer McDonald, Holland also was kicking at the officers so Officer McDonald administered a series of strikes to Holland's neck and leg. *Id*. at ¶ 18.

Eventually, Holland was flipped over and placed in the chair in a normal seated position. Holland dep., at 60. A spit sock was then placed over Holland's

head because the officers' claim that Holland was spitting on them.  *Id*. at 60-61;

Pugh aff., at ¶ 10.  Holland denies spitting on the officers.  Holland dep., at 64-65.

Holland says that if any blood or spit got on the officers then it was accidental and

happened while Holland was trying to breathe.  Holland aff., at ¶ 5.  Holland also

claims that he was struck in the ear by one of the officers after he was strapped to

the chair. Holland dep., at 63.

Holland, while still strapped to the restraint chair, was then moved into a

glass-encased holding cell next to the booking area.  Holland dep., at 64; Pugh

aff., at ¶ 13.  Holland claims that while he was in the observation room the officers

taunted him from the booking room.  Holland dep., at 66, 68.  The use of restraint

report indicates that Holland was strapped to the restraint chair from 12:35 AM

until 3:45 AM.  Exhibit B to Mayer aff.

At approximately 3:45 AM, Holland was removed from the restraint chair

and placed back in the holding cell where he went to sleep.  Holland dep., at 69-

71; see Exhibit B to Mayer aff.  The next morning when Holland awoke, an officer

asked him if he wanted to go to the hospital.  Holland dep., at 71.  Holland

declined the request.  *Id*.  The officers then asked him if he would take a blood test

for HIV, to which Holland consented.  *Id*.  Holland claims that he only consented

to the blood test because the officers threatened to charge him with felony assault

on a police officer and take him to the county jail if he did not consent to the test. *Id*. at 73.  After the blood test was completed, Holland was allowed to use the telephone.  *Id*. at 75-76; Holland aff., at 5.

Holland was picked up from the Hoover jail by a friend and immediately taken to the emergency room at Cooper Green hospital.  Holland dep., at 72. Holland was diagnosed with severe contusions.  *Id*.

About two weeks after he was released from the Hoover jail, Holland received a letter informing him that he was being charged with two counts of harassment.  Holland dep., at 76.  Holland voluntarily turned himself in.  *Id*. at 76-77.  At his municipal court trial, Holland was found guilty of driving under the influence and two counts of harassment.  *Id*. at 80.  Holland appealed the guilty verdict to the Jefferson County Circuit Court where he was acquitted of all charges.  *See* CC-05-2354 (DUI); CC-05-2355 (harassment); CC-05-2356 (harassment).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of

law."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The Supreme Court

has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against
> a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which
> that party will bear the burden of proof at trial.   In such a situation,
> there can be "no genuine issue as to any material fact," since the
> complete failure of proof concerning an essential element of the non-
> moving party's case necessarily renders all other facts immaterial.

*Id.* at 322-23 (quoting Fed. R. Civ. P. 56(c)).   The party moving for summary

judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings which it

believes demonstrates the absence of a genuine issue of material fact.   *Id.* at 323.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by

. . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file' designate 'specific facts showing that there is a genuine issue for trial.'"   *Id.*

at 324 (quoting Fed. R. Civ. P. 56(e)).   In meeting this burden the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to

the material facts."   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986).   That party must demonstrate that there is a "genuine issue

for trial."   Fed. R. Civ. P.  56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v.*

9

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## IV. DISCUSSION

*Counts I-III*

Counts I-III of Holland's amended complaint allege that the COH and the Hoover Police Chief[3] violated Holland's constitutional rights by negligently supervising, training, and retaining its officers.  These three claims are brought pursuant to 42 U.S.C. Section 1983.

When a section 1983 claim is asserted against a municipality, the court must examine two different issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The COH cannot be held liable for the alleged violation of Holland's civil rights based solely on the theory of *respondeat superior*.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  Rather, to establish liability against the COH, Holland must demonstrate an official custom or policy which causes the constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Collins*, 503 U.S. at 120-21.  "These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (quoting *Monell*, 436 U.S. at 694)

---

[3]Former Police Chief Robert Berry and current Police Chief Nicholas Dergis were dismissed from this case by court order on November 1, 2006 (doc. 32).

The failure to properly train, supervise, or retain its officers, without more, is insufficient for liability.  Holland must show instead that a policy or custom of failing to properly train, supervise, or retain its officers caused the violation of their rights.  *City of Canton, Ohio*, 489 U.S. at 389-91; *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  "There are 'limited circumstances' in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights."  *Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001).  To prevail on such a claim, a plaintiff must show:

> (1)his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to his constitutional rights, and (3) the policy or custom *caused* the violation of his constitutional rights.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005).  "A custom is a practice that is so settled and permanent that it takes on the force of law."  *Id*.

> "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice."  *McDowell*, 392 F.3d at 1290.  And "state and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes."  *Cooper*, 403 F.3d at 1221 (quotation marks omitted).

*Ludaway v. City of Jacksonville, Florida*, 2007 WL 2455348, *2 (11th Cir. 2007).

12

Holland argues that Hoover had a policy or custom of inadequately training, supervising, and retaining its officers.  As evidence, Holland points to the fact that Officers Pugh, Leach, and McDonald were not trained as detention officers and that they were not trained in the use of the restraint chair.  Holland also argues that Officer Mayer was inadequately trained to be in charge of the detention facility because he had only been out of the police academy for two years.

However, Holland has failed to identify an official policy of the COH condoning arrests without probable cause or the use of excessive force by officers in order to control a person under arrest.  While it is certainly true that such an official policy will rarely exist, Holland also cannot show that the COH has demonstrated deliberate indifference.  The evidence actually shows that the COH has established guidelines for the use of force and that each of the officers were trained in the use of appropriate force in different situations. Leach aff, at ¶ 5; Mayer aff., at ¶ 2; McDonald aff., at ¶ 5; Pugh aff., at ¶ 4.  The evidence also shows that Officer McDonald was trained on the department's requirement that police officers have probable cause before making an arrest.  McDonald aff., ¶ 5.

Holland has also failed to establish that there is a widespread custom of arresting people without probable cause or of using excessive force among the

COH police department.  Holland has presented no evidence of any similar

incidences that would tend to demonstrate a widespread custom within the COH.

Having failed to demonstrate that a policy or custom of the COH caused the

alleged violations of Holland's constitutional rights, the COH cannot be held

liable.

Having considered the foregoing, the court concludes that there are no

genuine issues of material facts with regard to Counts I-III and, therefore,

summary judgment is due to be GRANTED on Counts I-III in favor of COH.


*Counts IV & V*

Counts IV and V invoke 42 U.S.C. Section 1983 and claim damages for

violation of Holland's constitutional rights.  Count IV alleges that Officer

McDonald, Officer Mayer, Officer Pugh, and Officer Leach used excessive force

against Holland and caused Holland to be unreasonably seized in violation of the

Fourth and Fourteenth Amendments.  Count V alleges that Officer McDonald

falsely arrested Holland in violation of the Fourth and Fourteenth Amendments.

Holland appears to also bring these claims against the COH.  Summary judgment

is due to be GRANTED on Holland's claims against the COH because, as

explained above, Holland cannot show that the alleged constitutional violations

14

are a result of COH policy or custom.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)

To state a claim for relief under 42 U.S.C. Section 1983, Holland must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the person who committed this alleged deprivation acted under color of state law.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2004).  The defendant officers argue that they are immune from Holland's claims under the doctrine of qualified immunity. "Qualified immunity offers 'complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)) (additional quotations omitted).

To receive qualified immunity, the officer must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Lee,* 284 F.3d at 1194.  The parties do not dispute that the defendant officers were acting within their discretionary authority, and, therefore, Holland bears the burden to show that qualified immunity is not appropriate.  *See*

15

*Id.*

To determine whether the defendant officers are entitled to qualified immunity, the court applies a two-part inquiry: First, viewing the facts in the light most favorable to Holland, the court must determine whether the defendant officers violated Holland's constitutional rights.  Second, if the court decides that a constitutional violation has occurred, the court must then determine whether the rights violated were "clearly established."  *Id.; see also Draper v. Reynolds*, 369 F.3d 1270, 1274-75 (11th Cir. 2004).

Turning to the issue of whether the defendant officers violated Holland's constitutional rights, the first step is to determine the relevant facts.  *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).  In a qualified immunity case, this means viewing the facts in the light most favorable to the plaintiff and adopting the plaintiff's version of the facts.  *Id*. at 1774-75.  When conflicts arise, the court credits the nonmoving party's version, even though the facts accepted by the court may not be the "actual facts of the case."  *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  By taking the facts in the light most favorable to the plaintiff, the court eliminates all issues of fact, and the court has the plaintiff's best case

16

before it.[4]  *Robinson v. Arrugetta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

In Count IV, Holland claims that the defendant officers used excessive force in violation of his Fourth and Fourteenth Amendment rights.  "To assert a Fourth Amendment claim based on the use of excessive force, [Holland] must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."  *Troupe v. Sarasota County, Fla*., 419 F.3d 1160, 1166 (11th Cir. 2005).  A seizure occurs when a police officer restrains an individual's freedom to walk away, by means of physical force or show of authority.  *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).  The parties do not dispute that Holland was seized because when the alleged use of excessive force occurred, Holland was under arrest and being transported from a holding cell to a restraint chair.

The defendant officers argue that they used only the amount of force necessary to secure Holland in the restraint chair.  "In determining the reasonableness of the manner in which a seizure is effected, [the court] must balance the nature and quality of the intrusion on the governmental interests alleged to justify the intrusion."  *Scott*, 127 S. Ct. at 1778 (quoting *U. S. v. Place*,

---

[4]The court notes that the videos of the arrest and the booking room do not contradict, nor do they support, Holland's version of the facts.  Because Officer McDonald's radio was turned up the court is unable to hear what was said between Holland and Officer McDonald at the scene of Holland's arrest.  Similarly, other than there are three to four officers present surrounding Holland in the booking room, it is difficult to make any factual determinations based on the video of the booking room because of the poor quality and lack of sound.

17

462 U.S. 696, 703 (1983)). In order to balance the necessity of using some force

against the individual's constitutional rights, the court must evaluate several

factors including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight. *Lee*, 284 F.3d at 1197-98. .

The force used by the police officers must be reasonably proportionate to

the need for that force. *Id*. at 1198. The court must judge the "reasonableness of a

particular use of force from the perspective of a reasonable officer on the scene,

rather than with 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396

(1989).

The defendant officers defend their use of force by arguing that Holland

posed a threat of harming himself or the officers. Accepting Holland's version of

the facts, there is a genuine issue of material fact as to whether the defendant

officers used excessive force. Holland testified in his deposition that he was

cooperative and non-abusive throughout the booking process. Holland also

testified that once he was placed in the holding cell he did bang on the door with

his hand and call an officer an "asshole," but denies creating the type of disruption

that justified placing him into the restraint chair. While Holland was in the

holding cell, the only person he could have possibly posed a danger to was

18

himself.  Holland's account shows that he did nothing more than demand to use the telephone by yelling at the officers and banging on the cell door.  Therefore, while Holland was in the holding cell, he certainly did not pose a threat to himself or the officers that would justify the significant force that was used on him.  In addition, Holland's actions did not justify the officers' decision to move him to the restraint chair.

The unjustified decision to move Holland to the restraint chair is what created the danger that the officers now argue justified the use of force.  Furthermore, there were four officers present to escort Holland from the holding cell to the restraint chair.  Judging by the video, which depicted the officers' size and actions when placing Holland in the restraint chair, the four officers should have been more than capable of placing the six foot two, one hundred and sixty pound plaintiff in the restraint chair without using the significant amount of force that was used.  There was simply no need to administer between ten and fifteen strikes to sensitive areas across Holland's body after he had been placed in handcuffs.

The non-violent nature of the crime for which Holland was arrested supports the court's conclusion that a genuine issue of material fact exists about whether excessive force was used.  There is no doubt that driving under the

influence is a serious crime.  However, in this case Holland was not even driving his car nor was he able to drive it when he was arrested because his car had a flat tire.   Therefore, the use of excessive force cannot be justified by the crime for which Holland was arrested.  Finally, Holland never attempted to resist arrest or evade the officers attempts to arrest him.  This factor along with the factors listed above persuade this court that there is a genuine issue of material fact about whether excessive force was used.

The court is aware that Officer McDonald admits striking Holland ten to fifteen times in the forearm, leg, and neck and that the other officers deny doing anything other than trying to control Holland.  However, even if the other officers did not use excessive force, under the law of the Eleventh Circuit Court of Appeals, the other officers are still liable for Officer McDonald's use of excessive force.   "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th. Cir. 1985));  *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir.2000). Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow.  *Id*.  Furthermore, in

20

*Skrtich*, the Eleventh Circuit Court of Appeals expressly rejected the argument that "the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force." *Id*. at 1302.  In this case, the other officers were in a position to intervene and prevent Officer McDonald from striking the plaintiff.  All of the officers were within a couple of feet of Officer McDonald while Officer McDonald was repeatedly striking Holland's body.  Furthermore, because Holland's head was buried in the seat of the chair, he does not know which officer(s) were striking him.  Therefore, viewing the evidence in the light most favorable to Holland, there is a genuine issue of material fact as to whether excessive force was used by the defendant officers on Holland.

After a constitutional violation has been established, the court must determine whether the rights at issue were clearly established.  *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir.2000).  The plaintiff can show the law clearly established the officer's use of force was excessive in two ways: (1) "a controlling and materially similar case declares the official's conduct unconstitutional;" or (2) "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id*.

21

The court finds that while there are no materially similar cases, the unlawfulness of the officers' conduct should have been readily apparent to the officers.  The risk that Holland posed to himself or the officers was minimal.  It was certainly not enough to justify the use of significant force that was used by the officers.  It should have been readily apparent to the officers that administering 10 to 15 strikes to Holland's body was excessive - particularly where there were four much larger officers trying to control one person and Holland was handcuffed at least during part of the beating.

Having considered the facts in the light most favorable to the plaintiff, there are genuine issues of material fact concerning whether excessive force was used and therefore the defendant officers' motion for summary judgment is DENIED with respect to Count IV.

In Count V, Holland claims that he was arrested without probable cause in violation of his constitutional rights under the Fourth and Fourteenth Amendments.  "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."  *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).  Where probable cause for an arrest exists, however, no false arrest claim pursuant to section 1983 is viable.  *Id*. at 1505-06.  Probable cause exists "when the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

In false arrest claims, qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999). Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could - not necessarily would - have believed that probable cause was present. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003). This inquiry is objective as the court must ask whether the defendant officers' actions were objectively reasonable regardless of the officers' underlying motivation or intent. *Montoute v. Carr*, 114 F.3d 181, 183 (11th Cir. 1997).

Holland was arrested for driving under the influence of alcohol in violation of Ala. Code § 32-5A-191. Ala Code § 32-5A-191 states that "[a] person shall not drive or be in actual physical control of any vehicle while ... [u]nder the influence of alcohol." The statute does not require that the arresting officer witness the person driving under the influence; the officer need only find the individual to be in actual physical control of the vehicle while under the influence of alcohol.

23

*Eubanks v. Brook*, 197 Fed. Appx. 819, 822 (11th Cir. 2006).

In *Eubanks*, the Eleventh Circuit held that arguable probable cause existed where the plaintiff's breath smelled of alcohol, the plaintiff almost fell when trying to step out of his vehicle, and the plaintiff's speech was slurred. *Id*. at 822. Like this case, the officer did not witness Holland driving, however, Holland admitted to the officer that he was driving the car. *Id*.

In this case, Officer McDonald was dispatched to investigate an accident and possible drunk driver. McDonald aff., at ¶ 6. Officer McDonald states that he smelled a moderate to heavy odor of alcohol on Holland's breath and Holland was very unsteady on his feet. *Id*. ¶ 7, 8. Holland also admitted that he was driving the car when he drove onto the curb and punctured his tire. *Id*. ¶ 8. Officer McDonald's observations of Holland's condition on the night in question are similar to the observations made by the officer in *Eubanks*. Based on the report from the dispatcher and his own observations, Officer McDonald had arguable probable cause to believe that Holland violated Ala. Code § 32-5A-191. Accordingly, Officer McDonald is entitled to qualified immunity in relation to Count V and summary judgment is due to be GRANTED on Count V because no genuine issues of material fact remain.

*Count VI*

In Count VI, Holland alleges under 42 U.S.C. Section 1985, that the defendants conspired to deprive him of his constitutional rights.  The defendants argue that Holland has failed to state a claim upon which relief can be granted. Under the doctrine of intracorporate conspiracy, "a corporation cannot conspire with itself, and its employees, when acting in the scope of their employment, cannot conspire among themselves" because a corporation and its employees are considered to be "a single legal actor."  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).  The intracorporate conspiracy doctrine also applies to public, governmental entities.  *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 891 (11th Cir. 2007) (citing *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir.2000)).  Therefore, as long as the officers were acting within the scope of their employment, it is impossible for them to conspire among themselves.  The parties do not dispute that the defendant officers were acting within the scope of their employment in arresting and detaining Holland.  As a result, no genuine issues of material fact exist with respect to Count VI and summary judgment is due to be GRANTED on Holland's claim of

conspiracy under 42 U.S.C. section 1985.[5]

*Counts VII & IX*

In Counts VII and IX, Holland alleges state law claims of assault and

battery and negligence.  The defendants contend that summary judgment should be

granted on these claims because the officers are immune under state law.  The

Alabama legislature has granted municipal police officers statutory immunity from

tort liability for "conduct in performance of any discretionary function within the

line and scope of his or her enforcement duties."  Ala. Code § 6-5-338(a) (1975).

Such immunity shields a state agent from suit in his or her personal capacity for

claims based upon "exercising judgment in the enforcement of the criminal laws of

this State, including but not limited to, law enforcement officers' arresting or

attempting to arrest persons."  *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).

No immunity is available, however, "when the State agent acts willfully,

---

[5]The court notes that Holland failed to address Count VI in either his brief in opposition to the defendants' motions for summary judgment or in his supplemental brief in opposition to the defendants' motions for summary judgment (docs. 61 & 63).  While the law is clear that Holland cannot proceed with Count VI against COH and the defendant officers, the court also finds that Holland abandoned Count VI by not addressing it in either of his responses.  *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284-85 (11th Cir. 2003); *see also McIntyre v. Eckerd Corp.*, 2007 WL 3023944 *3-4 (11th Cir. 2007).

maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id*.

In Count VII, Holland alleges state law claims of assault and battery. Assault and battery are both intentional torts. The Alabama Supreme Court has stated on multiple occasions that "peace officer immunity, like State-agent immunity, does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment." *Hollis v. City of Brighton*, 950 So.2d 300, 305 (Ala. 2006) (citing *Ex parte Turner*, 840 So.2d 132, 136 (Ala. 2002)); *see also Gary v. Crouch*, 867 So.2d 310, 313-14 (2003). Therefore, state-agent immunity does not apply in Holland's state law claims of assault and battery.

In Count IX, Holland alleges that the defendant officers acted negligently, wantonly, and recklessly. With regard to Count IX, the defendant officers are entitled to immunity as long as they did not act "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So.2d at 405. Viewing the facts in the light most favorable to Holland, there is a genuine issue of material fact as to whether the defendant officers acted maliciously in their treatment of Holland. If, as Holland alleges, he was doing nothing more than banging on the

27

cell door and yelling at the officers, then the only explanation for the officers'
decision to move Holland to the restraint chair and use excessive force is that they
were acting maliciously.

Having considered the foregoing, the court concludes that summary
judgment is due to be DENIED on Counts VII and IX.


*Count VIII*

In Count VIII, Holland requests injunctive relief from the court.  In order to
obtain injunctive relief, the plaintiff must prove that: 1) there is a substantial
likelihood that he will prevail on the merits; 2) he will suffer irreparable injury
unless the injunction issues; 3) the threatened injury to the movant outweighs
whatever damage the proposed injunction may cause the opposing party; and 4)
the injunction, if issued, would not be adverse to the public interest.  *Zardui-
Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985).

In this case, Holland has already suffered the alleged injury and has not
shown that there is a substantial likelihood that he will suffer a future injury if the
injunction is not issued.  Thus, Holland cannot meet the second prong of his
burden.  Therefore, summary judgment is due to be GRANTED on Count IX.

## V. CONCLUSION

Having considered the foregoing, the court finds that summary judgment is due to be GRANTED IN PART and DENIED IN PART.  As stated above, summary judgment is due to be GRANTED on Counts I, II, III, IV, V, VI, and VIII in favor of the COH because no genuine issues of material fact exist. Accordingly, the COH is DISMISSED from this case as a party.

Summary judgment is also due to be GRANTED on Counts VI and VIII in favor of Officer McDonald, Officer Mayer, Officer Pugh, and Officer Leach because no genuine issues of material fact exist.  Additionally, summary judgment is due to be GRANTED on Count V in favor of Officer McDonald because no genuine issues of material fact exist.

Summary judgment is due to be DENIED with respect to Counts IV, VII, and IX because genuine issues of material fact exist.

**DONE** and **ORDERED** this the 28th day of November 2007

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE